## • THE GENERAL PUTNAM.

### JOHN E. MOORE CO. v. DELAWARE, L. & W. R. CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

Nos. 181, 182.

COLLISION (§ 93*)—STEAM VESSELS MEETING—FAILURE TO OBSERVE PASSING AGREEMENT.

A steamship *held* solely in fault for a collision with a meeting ferryboat on the North River at night, and a resulting collision between the ferryboat and a car float in tow, on the ground that, although the two vessels as they approached each other were showing green to green and had properly exchanged signals to pass starboard to starboard, she afterwards ported and went ahead at full speed until she struck the ferryboat, which was proceeding according to the agreement, because she mistook a signal which the latter attempted to give to the tug having the car float in tow, which was coming down the river.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. § 93.*

Collision, signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Delaware, Lackawanna & Western Railroad Company, as owner of the ferryboat Binghamton, against the steamship General Putnam, John E. Moore Company, claimant, with cross-suit by such claimant against the railroad company. Decrees against the Putnam, and her claimant appeals. Affirmed.

The opinion of Hough, District Judge, filed May 13, 1913, is as follows:

By all the testimony the Binghamton and Putnam were approaching each other "green to green." The night was not so dark but that those on the Putnam knew the Binghamton to be a Lackawanna ferryboat bound for Barclay street, while those on the Binghamton recognized the Putnam as a familiar vessel pursuing her usual business.

Not only the business convenience of each vessel, but the law, positively required that they should pass each other starboard to starboard.

Admittedly signals to that effect were exchanged, and admittedly each vessel slightly starboarded her helm in furtherance of the maneuver agreed upon.

Then the Binghamton intended to blow one whistle—to the tug Cowen, which was at the time on her port side, and in my judgment, therefore, hidden from the Putnam. A breakdown of the Binghamton's whistle valve converted the intended one short blast into a long shriek that terminated only when steam was cut off. The fact that this endeavor to blow one short blast was not successful makes no difference at all in this case, for the Putnam assumed that one blast was intended, and further assumed that it was intended for her, and consequently acted upon the assumption that after having agreed to pass starboard to starboard the Binghamton had changed her mind and was proposing to take a course both dangerous and unlawful.

The first question in this case is whether the Putnam was justified in believing that the Binghamton's one blast was intended for her.

The Putnam's excuse for this belief is that there was nothing else in the river to which the Binghamton could have been blowing. Whatever force this excuse has is much weakened by the testimony from the Cowen introduced by

the Putnam. According to the report of the Cowen's master and the testimony of her mate, there had been an exchange of whistles between the Putnam and the Cowen before the Binghamton appeared 'upon the scene.

It of course follows that, if the Putnam and Cowen had been navigating with reference to each other before the Putnam was called upon to exchange signals with the Binghamton, the Putnam's navigators should have appreciated the fact that the ferryboat had come between them and the Cowen, and no excuse at all exists for their asserted belief that there was nothing else in the river to which the Binghamton could be blowing.

I am myself inclined to credit the testimony from the Cowen, but even without that evidence I am of opinion that what the Putnam's navigators thought the Binghamton meant by one whistle was so obviously dangerous and unlawful that they were not justified in acting as they did. ,

As soon as the Putnam's helm was ported the collision was inevitable, and for the natural results of that collision the Putnam is solely responsible.

It is, however, quite obvious that much, if not most, of the Binghamton's ·damages resulted from collision with the Cowen's car float, and the second question in the case is whether for that 'damage she can recover against the Putnam.

I am convinced that when the Binghamton blew one whistle (or intended so .to do) she was close aboard the Cowen. In order to avoid the Putnam she edged still closer. In respect of the Cowen, this was bad navigation, and, as against the Putnam, the ferryboat would have been completely justified in maintaining the course upon which she was when the Putnam swung under a port helm.

But the primary fault was that of the Putnam. The blunder of that vessel in assuming that the ·ferryboat's one whistle was intended for her is inexcusable, and the result of the ferryboat's having changed her course was to ease the blow between the Putnam and herself. The most stringent rule to which the ferryboat may be held is that of the privileged vessel bound to maintain her course and speed; yet even such a vessel has been excused for changing her course where collision appeared inevitable if. the course was maintained and the danger was solely due to the fault of another vessel. The Queen Elizabeth, 122 Fed. 406, 59 C. C. A. 345. Here collision was inevitable. The ferryboat's course was changed to the probable—indeed, almost certain—benefit of the Putnam, so far as that vessel's own injuries were concerned; for I believe that if the collision had been more direct the Putnam might have been sunk. If in thus easing the blow and lessening damage on one side, injury arose on the other side, the whole damage was proximately caused by the General Putnam.

It follows, therefore, that the Putnam's libel is dismissed, and that of the Binghamton sustained—in each case, with costs.

This cause comes here on appeal from decrees. holding the General Putnam solely in fault for a collision of the Binghamton, first with the Putnam, and afterwards with a car float in tow of the tug John K. Cowen. The collision occurred at night. The Putnam was landing immigrants from Ellis Island at several piers. She had left a pier of the Erie Railroad, and was bound for a pier of the Delaware, Lackawanna & Western Railroad, just south of its Hoboken ferry slips. The Binghamton left one of these slips bound for Barclay street, New York. They sighted each other in ample time, showing green .to green. The Putnam gave a two-blast signal, which was answered with a like signal by the Binghamton, and both vessels starboarded slightly. Immediately after this exchange of signals, the mate of the Binghamton called her master's attention to ,the Cowen and float, which was coming straight down the river on the ferryboat's port beam. The master thereupon pulled his whistle cord to give a single blast to the Cowen, the whistle jammed, and the signal became a prolonged shriek, which continued until after collision. The master of the Putnam, who had stopped his engines, assumed that it was one blast when it began to blow, and at once blew a single whistle, started up full speed and ported, but, seeing the Binghamton keeping on, without apparent change, stopped and backed. The Binghamton tried to get away by hauling towards the New York side, but without success, and the Putnam struck her a little forward of amidships. The Binghamton at once stopped to

avoid raking the bow of the Putnam the whole length of the Binghamton and turning the Putnam over. Each knew the other boat carried passengers. The Binghamton did not back, because of the position of the Cowen, which was close on her port side, and would have struck her amidships with great force, if the latter had then backed. Shortly after the first collision, and while the Putnam was backing clear, the car float collided with the Binghamton.

Herbert Green, of New York City, for appellant.

J. L. Seager, of New York City (A. J. McMahon, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

PER CURIAM. We fully concur with Judge Hough, and affirm on his opinion.

There would have been no collision with either vessel, had the Putnam carried out the navigation she agreed to, which involved no departure from the rules, and was the proper navigation for the Binghamton and the Putnam to agree on when, bearing green to green, they exchanged signals. The Putnam was not warranted in changing her course when she heard the subsequent long blast from the Binghamton. Possibly she might, without fault, have checked her own motion to see what the ferryboat was going to do; but she was in fault, when starboard to starboard was the course the rules indicated and which both had agreed to, in suddenly undertaking to pass port to port.

No doubt the master of the Binghamton should have seen the Cowen sooner. The latter must have been about opposite or a bit below the Binghamton's slip when she came out and turned down river. But this failure to see the Cowen earlier did not cause the trouble. The Binghamton had already overtaken the Cowen, and at her own rate of speed—nearly double that of the tug—could safely have gone on and crossed the Cowen's bow, had not the Putnam got in the way and thereby made it necessary for her to stop and maneuver to make the contact of the Putnam and Binghamton less perilous for the passengers on both boats.

The decrees are affirmed, the first with interest, and a single bill of costs in both suits.